**E-FILED**
Friday, 22 November, 2013  05:42:22 PM
Clerk, U.S. District Court, ILCD

## IN THE UNITED STATES DISTRICT COURT
### CENTRAL DISTRICT OF ILLINOIS
### SPRINGFIELD DIVISION

| | | |
|---|---|---|
| JOHN D. BRICKEY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 12-3202 |
| | ) | |
| SCOT FITZGERALD, | ) | |
| | ) | |
| Defendant. | ) | |

## OPINION

SUE E. MYERSCOUGH, U.S. District Judge.

This cause is before the Court on Defendant Scot Fitzgerald's Motion for Summary Judgment (d/e 36).  The Motion is GRANTED IN PART.  A reasonable officer could have believed that he had probable cause to arrest Plaintiff John D. Brickey for resisting/obstructing arrest.  Therefore, Defendant is entitled to qualified immunity on Count 1.  Further, the Court declines to exercise supplemental jurisdiction over Plaintiff's state law claims.  Therefore, Counts 2 and 3 are DISMISSED WITHOUT PREJUDICE.

## I. FACTS

Identifying the undisputed and disputed facts was made more difficult by Plaintiff's failure to completely and properly comply with Local Rule 7.1(D) when responding to Defendant's Statement of Undisputed Facts.  For example, Plaintiff's Response contains a section identified as "Undisputed Material Facts" but Plaintiff disputes several of the facts listed therein.  Moreover, Plaintiff did not respond to Defendant's Statement of Undisputed Facts Nos. 1 through 11, 13, 15-19, 21, 24, 32, 41, 51-69.  Therefore, those facts are deemed admitted.  <u>See</u> CDIL-LR 7.1(D)(2)((b)(6) ("A failure to respond to any numbered fact will be deemed an admission of fact").

Plaintiff also did not specifically dispute the fact that Defendant told Plaintiff to turn around after instructing him he was under arrest.  <u>See</u> Def. Statement of Undisputed Facts Nos. 38, 39, d/e 38.  Plaintiff does not cite to specific evidence to dispute that fact.  In his deposition, Plaintiff stated that he did not recall Defendant telling him to turn around.  A statement that one does not recall is insufficient to create a genuine issue of material fact.  <u>See</u> Pl. Dep., d/e 36-2 at p. 111; <u>Mucha v. Village of Oak Brook</u>, 650 F.3d 1053, 1056 (7th Cir. 2011) (finding that the plaintiff's testimony that he could not recall when or whether he told the defendant about the

background check was inconclusive and could not by itself create a genuine issue of material fact; therefore, the court accepted the defendant's testimony about when he learned about the background check); <u>Abbott v. Sangamon County, Ill.</u>, 705 F.3d 706, 720 (7th Cir. 2013) (finding the fact that the defendant ordered the plaintiff to halt was undisputed because the plaintiff could not recall one way or the other).

Having reviewed the parties' submissions and reading the entire record, the Court sets forth the following facts.

On the afternoon of July 13, 2011, Plaintiff and Matt Dillon were in the process of cleaning up property located at 103 East Michigan, Murrayville, Illinois.  The house on that property had previously burned down, and the Village of Murrayville had been pressuring the owners to clean up the property.  Plaintiff had an agreement to purchase the property from the owners.

## A.   The Murrayville Ordinance Restricted Certain Types of Open Burning

At the time of the incident, Murrayville had in place an Open Burning Ordinance.  <u>See</u> Exhibit A, Village of Murrayville, Il. Rev. Ordinances ch. 27, art. VIII (2008) ("Ordinance"), d/e 36-1.  The Ordinance defined "open burning" as:

the combustion of any matter in such a way that the produces [sic] of the combustion are emitted to the open air without originating in or passing through equipment for which a permit could be issued under Section 9(b) of the Environmental Protection Act of the State of Illinois.

Ordinance § 27-8-1.  The Ordinance restricted certain types of open burning, including:

(A)  Open burning that is offensive or objectionable due to smoke or odor emissions when atmospheric conditions, the condition of the wood or wood products, or local circumstances make such fires hazardous or objectionable.

See Ordinance § 27-8-4(A).  However, recreational fires—defined as the burning of any wood materials in an accumulation less than three feet in diameter and three feet in height—were permitted.  Ordinance § 27-8-2(C). Nonetheless, the Ordinance prohibited recreational fires that are "offensive or objectionable due to smoke or odor emissions when atmospheric conditions, the condition of wood or wood products, or local circumstances make such fire hazardous or objectionable." Id.

The Ordinance also provided for orders of extinguishment of a fire deemed to be unlawful, offensive, or objectionable:

The authority having jurisdiction is authorized to order the extinguishment by the individuals or the fire department of any fire which is unlawful, or is offensive or objectionable due to smoke or odor emissions when atmospheric conditions,

> condition of the wood or wood products or local circumstances
> make such fires hazardous or objectionable.

Ordinance § 27-8-8.  The penalty for failing to extinguish a fire when

ordered to do so was a fine of not less than $100 nor more than $750.

Ordinance § 27-8-9.  Violations of other Sections of the Ordinance were

punishable by a fine of not less than $25 nor more than $100.  Id.

**B.     Defendant Ordered Plaintiff to Put Out the Fire**

At approximately 4 p.m. on July 13, 2011, Defendant, the Murrayville

Chief of Police, observed open burning at 103 East Michigan Street.

Undisputedly, it was a typical sunny day.  Defendant claims he observed

black smoke drifting through town and detected a foul odor, which he

understood was prohibited by the Ordinance.

Plaintiff disputes this description of the fire.  Plaintiff claims he was

burning clean wood in a burn barrel, which was described as a 275 gallon

oil tank with the top cut off.  See Dillon Dep., d/e 36-9 at p. 37.  Plaintiff

and his witnesses describe the fire as clean, odorless, and producing little

smoke.

According to Plaintiff's witnesses, Defendant told Plaintiff there was a

"no burn code" and to put the fire out.  Plaintiff asked to see the applicable

Ordinance, but Defendant refused to provide it.  Nonetheless,   Plaintiff agreed to allow the fire to burn out, and Defendant left.

Plaintiff then left the property to speak to Randy Edwards, the Murrayville Fire Chief, and David Evans, the Village Mayor.  Plaintiff testified that Edwards and Evans told Plaintiff he could burn so long as the fire was not a nuisance.  Specifically, Plaintiff testified that Edwards told him it was okay to burn if the fire is contained and "you can't be a nuisance." Pl. Dep., d/e 36-2 at p. 80.  Plaintiff also testified that Evans told him "you can burn but don't be a nuisance."  Id. at p. 83.

When Plaintiff returned to the property, Kenny Vanbebber was there along with Dillon.  Based on Plaintiff's conversation with the Mayor and Fire Chief, Plaintiff advised Dillon and Vanbebber that they could start burning wood again.

## C.    Defendant Returned to the Property, and Plaintiff was Arrested

At approximately 6:16 p.m., Defendant returned to the property. Defendant testified that he observed the same dark, black smoke.  Plaintiff and Plaintiff's witness, however, testified there was no foul odor and very little smoke.

According to Plaintiff and Plaintiff's witnesses, Defendant approached Plaintiff, who was operating a track hoe.  Defendant was holding up handcuffs.  After Plaintiff turned off the track hoe, Defendant told Plaintiff he was under arrest for an illegal fire.  Plaintiff asked Defendant at least twice to show him the code book, but Defendant refused.  As Plaintiff got off the track hoe and turned to face Defendant, Defendant kept "crowding" Plaintiff and got in Plaintiff's face.  Both Plaintiff and Defendant used profanity.  Plaintiff told Defendant that Plaintiff had permission to burn.

Defendant requested Plaintiff's driver's license, to which Plaintiff responded that he did not need a driver's license to operate a track hoe.  As the parties stood face to face, Defendant placed his hand on his pistol and unsnapped the holster.  Plaintiff walked away from Defendant and requested a "real officer" because things were getting out of hand.  Plaintiff also admits he stated that Defendant might "get his back dirty," although he was not sure if he made that statement the first time Defendant was there or the second time.  Plaintiff admits that the confrontation was heated.

Defendant radioed for backup.  Plaintiff stood by Dillon and Vanbebber.

In contrast to Plaintiff's version of the events, Defendant denies holding up the handcuffs as he approached Plaintiff and asserts he advised Plaintiff he would be receiving a citation for violation of the open burning ordinance.  Defendant also testified that while he and Plaintiff argued, Plaintiff poked him.  Defendant claims it was after Plaintiff poked him that he told Plaintiff he was under arrest.

Defendant told Plaintiff several times to turn around and put his hands behind his back, but Plaintiff would not do so.  Plaintiff testified that he did not recall Defendant telling him to put his hands behind his back.  Plaintiff disputes that he refused to do so because he had his hands behind his back the entire time.

Plaintiff also testified that he did not recall Defendant telling him to turn around but did not specifically dispute this fact in his Response.  As noted above, that testimony, by itself, is insufficient to create a genuine issue of material fact.  Therefore, the Court finds it undisputed, for purposes of summary judgment, that Defendant told Plaintiff to turn around.

Plaintiff testified that Defendant never touched him, and Plaintiff never touched Defendant.  Plaintiff denies poking Defendant in the chest.

Witnesses testified that the brims of Plaintiff's and Defendant's caps touched.  Defendant described the touching of the caps as "incidental contact because of how we were standing."

## D.     Other Officers Arrived at the Scene and Transported Plaintiff to the Jail

After a few minutes, Officers Derek Suttles and Cameron Watson arrived at the scene.  Plaintiff claims that Defendant told Suttles and Watson that Plaintiff was under arrest for poking Defendant in the chest or the side.  Plaintiff offered to have either Suttles or Watson transport him to the jail.

Suttles transported Plaintiff to the jail.  Plaintiff was not put in handcuffs.  At the jail, Plaintiff was taken to the booking room and released on a cash bond.  Plaintiff was in the jail about one hour and was never handcuffed or put in a jail cell.

## E.     The State's Attorney Dropped All Charges Against Plaintiff

At the jail, Plaintiff was issued a citation by Defendant for resisting or obstructing a police officer.  The State's Attorney later added the additional charge of disturbing the peace.  All charges were ultimately  dropped by the State's Attorney, and Plaintiff was never prosecuted.

**F.     Plaintiff Filed Suit Against Defendant Alleging Federal and State Law Claims**

In July 2012, Plaintiff filed a Complaint in state court.  Plaintiff alleges a federal claim of false arrest (Count 1) and two state law claims of willful and wanton conduct.  Count 2 alleges assault based on Defendant putting his hand on his weapon and unlatching the holster.  Count 3 alleges a state law claim of false arrest/unlawful imprisonment.  The Complaint had also included a Count 4, in which Plaintiff named the Village of Murrayville as a respondent in discovery.  In September 2012, Count 4 and the Village of Murrayville were dismissed.

In August 2012, Defendant removed the action to federal court.  Defendant now moves for summary judgment on all three Counts.

## II. LEGAL STANDARD

Summary judgment is appropriate where the record, viewed in the light most favorable to the nonmovant, shows there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law.  Fed.R.Civ.P. 56(a); <u>Trentadue v. Redmon</u>, 619 F.3d 648, 652 (7th Cir. 2010) (also noting that all reasonable inferences must be drawn for the non-movant).  The party moving for summary judgment bears the burden of showing the absence of a genuine issue of material fact.  <u>Celotex</u>

Corp. v. Catrett, 477 U.S. 317, 322 (1986).  Once the movant has met his burden, the nonmovant must present evidence sufficient to establish a triable issue of fact on all essential elements of his claim.  Trentadue, 619 F.3d at 652.

The court does not evaluate the weight of the evidence or determine credibility.  Outlaw v. Newkirk, 259 F.3d 833, 837 (7th Cir. 2001).  Instead, the court determines whether there is a genuine issue of fact for trial.  Id.

Defendant also asserts that he is entitled to qualified immunity. Governmental actors are entitled to qualified immunity where their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.  Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982) (providing that qualified immunity protects governmental actors from liability for civil damages).

The court applies a two-part inquiry to determine whether a defendant is entitled to qualified immunity.  First, the court examines whether the plaintiff has presented evidence, taken in the light most favorable to the plaintiff, that would allow a reasonable fact finder to determine that the plaintiff was deprived of a constitutional right. Sallenger v. Oakes, 473 F.3d 731, 739 (7th Cir. 2007), citing Saucier v. Katz, 533 U.S.

194, 201 (2001), <u>overruled</u> <u>in</u> <u>part</u> <u>by</u> <u>Pearson v. Callahan</u>, 555 U.S. 223, 231 (2009).  Second, the court examines whether the particular constitutional right was clearly established at the time of the alleged violation.  <u>Id.</u>  A court may, in its discretion, address the second prong of the test first.  <u>Pearson</u>, 555 U.S. at 242.

The plaintiff must establish the existence of a clearly established constitutional right.  <u>Rice v. Burks</u>, 999 F.2d 1172, 1174 (7th Cir. 1993).  A plaintiff may do this by either pointing to a closely analogous case or by showing that the conduct was so egregious that no reasonable officer would have thought he was acting lawfully.  <u>Chelios v. Heavener</u>, 520 F.3d 678, 691 (7th Cir. 2008); <u>Abbott</u>, 705 F.3d at 723-24.

### III. ANALYSIS

Defendant asserts he is entitled to summary judgment on all three Counts.

### A.   Defendant is Entitled to Qualified Immunity on Count 1, False Arrest

Count 1 alleges a false arrest claim under 42 U.S.C. § 1983.  "The existence of probable cause to arrest is an absolute defense to any § 1983 claim for false arrest."  <u>Abbott</u>, 705 F.3d at 713-14.  Probable cause exists when the facts and circumstances within the officer's knowledge would

warrant a reasonable person to believe that the arrestee committed, is committing, or is about to commit an offense.  Id. at 714; see also Michigan v. DeFillippo  443 U.S. 31, 37 (1979).  Whether an arrest is supported by probable cause is usually a question of fact decided by the jury.  Abbott, 705 F.3d at 714.  However, if the underlying facts are undisputed, the court can make that decision on summary judgment.  Abbott, 705 F.3d at 714.

Probable cause requires only a substantial chance or probability of criminal activity.  Purvis v. Oest, 614 F.3d 713, 722-23 (7th Cir. 2010) (holding that "[t]he evidence need not show that the officer's belief is more likely true than false").  The inquiry is an objective one, and the officer's subjective state of mind is irrelevant.  Abbott, 705 F.3d at 714.

Qualified immunity provides an additional level of protection to officers.  Abbott, 705 F.3d at 714.  That is, if a reasonable officer could have believed the arrest was lawful, in light of clearly established law and the information known to the officer, then the officer is entitled to qualified immunity.  Abbott, 705 F.3d at 714.  This is sometimes called "arguable probable cause" and protects officers who reasonably but mistakenly believe that probable cause exists.  Abbott, 705 F.3d at 714.

The existence of probable cause or arguable probable cause depends on the elements of the predicate criminal offense.  <u>Abbott</u>, 705 F.3d at 715. However, it is immaterial what Defendant told Plaintiff was the basis for the arrest.  An arrest can be supported by probable cause that the arrestee committed any crime.  <u>Abbott</u>, 705 F.3d at 715.

Defendant argues that Plaintiff's arrest was justified on three grounds: (1) resisting and/or obstructing a peace officer, (2) battery, and (3) the continuing violation of the Ordinance.  Defendant alternatively argues he had arguable probable cause on the same three grounds and, therefore, is entitled to qualified immunity.

Plaintiff responds that factual disputes prevent entry of summary judgment in favor of Defendant.

The Court finds Defendant is not entitled to summary judgment on the grounds that he had probable cause or arguable probable cause to arrest Plaintiff for battery.  The facts are disputed whether Plaintiff poked Defendant.  Moreover, Plaintiff testified that Defendant got in Plaintiff's face.  Therefore, under Plaintiff's version of the facts, Plaintiff did not poke Defendant and Defendant caused the brims of the caps to touch.  Because questions of fact remain, Defendant is not entitled to summary judgment

on this ground.  See Chelios, 520 F.3d at 688 (finding that disputed facts about whether the plaintiff made physical contact with the officer precluded finding, on summary judgment, that the officer had probable cause as a matter of law); Washington v. Haupert, 481 F.3d 543, 548 (7th Cir. 2007) (affirming the district court's denial of qualified immunity where, under the plaintiffs' version of the facts, it was not reasonable for the officers to believe the plaintiffs committed domestic battery).

Similarly, questions of fact regarding the nature of the fire prevent a finding that Defendant had probable cause or arguable probable cause to arrest Plaintiff for an ordinance violation.  See Atwater v. City of Lago Vista, 532 U.S. 318, 323 (2001) (the Fourth Amendment does not prohibit an arrest for a fine-only offense); Williams v. Jaglowski, 269 F. 3d 778, 784 (7th Cir. 2001) (violation of a municipal code can support a custodial arrest).  Although Defendant described the fire as producing black smoke and a foul odor, Plaintiff's witnesses testified that the fire produced very little smoke and no odor.  Therefore, under Plaintiff's version of the facts, Defendant did not have probable cause or arguable probable cause to arrest Plaintiff for violating the Ordinance.

However, even under Plaintiff's version of the facts, Defendant had arguable probable cause to arrest Plaintiff for resisting or obstructing arrest.  That is, a reasonable officer could have believed that, in light of the clearly established law and the information known to the officer, the arrest was lawful.  See  Williams v. City of Chicago, --- F. 3d ---, 2013 WL 5755539, at *6 (7th Cir. Oct. 24, 2013) (noting that, for purposes of qualified immunity, the question is whether a reasonable officer could have mistakenly believed there was probable cause to arrest).

A person commits obstruction or resistance of a peace officer when he knowingly resists or obstructs an officer's performance of an authorized act. Abbott, 705 F.3d at 721, citing 720 ILCS 5/31-1(a).  Resisting or obstructing even an unlawful arrest violates 720 ILCS 5/31-1(a).  Brooks v. City of Aurora, Ill., 653 F.3d 478, 484 (7th Cir. 2011); Abbott, 705 F.3d at 720.

In People v. Raby, 240 N.E.2d 595, 599 (Ill. 1968), the Illinois Supreme Court held that section 5/31-1(a) prohibits physical acts that impede, hinder, interrupt, prevent, or delay the performance of the officer's duties.[1]  Physical resistance and obstruction includes going limp, forcefully

---

[1] In 2012, Illinois Supreme Court held that a physical act is not required to constitute obstruction under section 31-1(a) and that providing false information may constitute obstruction where the information actually impedes or hinders the officer.  People v.

resisting arrest, or physically helping another person avoid arrest.  <u>Raby</u>, 240 N.E.2d at 599.

However, verbal resistance or arguing with a police officer does not violate the statute.  <u>People v. McCoy</u>, 881 N.E.2d 621, 630 (Ill. App. Ct. 2008); <u>Gonzalez v. City of Elgin</u>, 578 F.3d 526, 538 (7th Cir. 2009) (holding that even profanity directed at a police officer does not constitute resisting a peace officer)(citing Illinois cases).  Similarly, failing to provide identification generally does not constitute obstruction.  <u>People v. Fernandez</u>, 963 N.E.2d 1058, 1061 (Ill. App. Ct. 2011) (finding, in the context of a <u>Terry</u> stop, that the "defendant could not be convicted of obstruction for merely refusing to identify himself and refusing to provide identification"); <u>but</u> <u>see</u> <u>People v. Nasolo</u>, 977 N.E.2d 798, 800 (Ill. App. Ct. 2012) (refusing to be photographed or fingerprinted in the course of booking procedures constituted obstruction).

Plaintiff argues that Defendant is not entitled to summary judgment because, under Plaintiff's version of the facts, Plaintiff verbally argued with Defendant and requested that Defendant call other officers to the scene.

---

<u>Baskerville</u>, 963 N.E.2d 898, 906 (Ill. 2012).  This case was decided after the events in question, however, and therefore could not have been known by a reasonable person in Defendant's position.

Plaintiff also asserts that he only backed away from Defendant when Defendant removed the safety of his holster and placed his hand on his service revolver.

However, Plaintiff also set forth and admitted additional facts. Under Plaintiff's version of the facts, Defendant approached Plaintiff, held up the handcuffs, and told Plaintiff he was under arrest.[2] Further, Plaintiff did not dispute that Defendant ordered him to turn around several time and that Plaintiff did not comply with Defendant's order to turn around. Plaintiff also moved away from Defendant, although he did not try to escape or flee. Plaintiff was not taken into custody until the other two officers came to the scene.

Illinois law does not clearly identify when a refusal to comply with a police officer's order constitutes obstructing or resisting arrest. Compare, e.g., People v. Synnott, 811 N.E.2d 236, 241 (Ill. App. Ct. 2004) (evidence that the defendant repeatedly disobeyed police officer's order to exit the vehicle was sufficient to support conviction for obstructing a peace officer)

---

[2] Although Defendant told Plaintiff he was under arrest, Plaintiff was not seized at this time because he did not submit to the assertion of authority. See California v. Hodari D., 499 U.S. 621, 626-29 (1991) (a declaration that a person is under arrest does not suffice to establish a seizure until the person finally submits to the assertion of authority).

with <u>People v. Flannigan</u>, 267 N.E.2d 739, 742 (Ill. App. Ct. 1971) (finding the evidence insufficient to support a conviction for resisting a peace officer where the defendant, after being told he was under arrest, did not comply with repeated requests to exit the vehicle, pulled his arm away from the officer, but eventually complied, exited the car, did not flee, and went to the police station).  The Seventh Circuit, in <u>Abbott</u>, has also noted the difficulty in determining at what point verbal argument or a refusal to act becomes an act of physical resistance or obstruction.  <u>Abbott</u>, 705 F.3d at 722 (finding the defendant was entitled to qualified immunity for events that occurred in June 2007 where reasonable minds could differ as to the meaning of the law; the plaintiff did not flee or physically clash with the officer but argued and failed to comply with the officer's order to stop approaching).

In this case, Plaintiff did more than merely argue with Defendant. Plaintiff refused to turn around to be handcuffed and actually delayed his arrest.  Plaintiff's conduct required that two additional officers come to the scene to effectuate Plaintiff's arrest.  Even though Plaintiff did not struggle with Defendant or engage in any physical contact with Defendant, his conduct impeded his arrest.  Given the lack of clarity in the law, a

reasonable officer could have reasonably believed that Plaintiff's conduct impeded Plaintiff's arrest and constituted resisting/obstructing arrest.  See, e.g., People v. Ostrowski, 914 N.E.2d 558, 571 (Ill. App. Ct. 2009) (affirming conviction for resisting arrest where the defendant "failed to abide by the officers' instructions and impeded their attempts to arrest him, even if only for a short period of time"); McCoy, 881 N.E.2d at 630 ("The appropriate question appears to be whether defendant's conduct – active, passive, or inactive—impeded the officer's attempt to execute an arrest"); Brooks v. City of Aurora, Ill., 653 F.3d 478, 484 (7th Cir. 2011) (officer was entitled to qualified immunity where a reasonable officer could have believed that the plaintiff resisted arrest by backpedalling away from the officers and turned to face the officer in a manner that could be construed as a resisting or defensive posture).  Therefore, Defendant is entitled to qualified immunity on Count 1.

## B.   The Court Declines to Exercise Supplemental Jurisdiction Over Plaintiff's State Law Claims

A district court should relinquish jurisdiction over pendent state-law claims unless: "(1) the state law claims may not be re-filed because a statute of limitations has expired, (2) substantial judicial resources have been expended on the state law claims, or (3) it is clearly apparent how the state

law claims are to be decided." <u>Dargis v. Sheahan</u>, 526 F.3d 981, 990 (7th Cir. 2008).

First, the running of the statute of limitations would not bar Plaintiff from filing his suit in state court because 735 ILCS 5/13-217 gives plaintiffs one year to file their claim in state court after dismissal by the federal court. Second, this Court dismissed the federal claim on summary judgment. While judicial resources have been expended on the state law claims, <u>substantial</u> judicial resources have not been expended because the Court is not addressing the state law claims on summary judgment. Finally, it is not absolutely clear how the state law claims will be decided. <u>See</u>, <u>e.g.</u>, <u>Davis v. Cook County</u>, 534 F.3d 650, 654 (7th Cir. 2008) (finding that the district court did not abuse its discretion in declining to exercise supplemental jurisdiction because the statute of limitations did not bar filing the claim in state court, the court "disposed of the federal claims on summary judgment, and so 'substantial judicial resources' have not yet been committed to the case" and it was not "absolutely clear" how the state law claim would be decided). Therefore, in an exercise of discretion, this Court declines to exercise supplements jurisdiction over Plaintiff's state law claims (Counts 2 and 3).

## IV.  CONCLUSION

For the reasons stated, Defendant Scot Fitzgerald's Motion for Summary Judgment (d/e 36) IS GRANTED IN PART.  Defendant is awarded summary judgment on Count 1.  The Court declines to exercise supplemental jurisdiction over Plaintiff's state law claims.  Therefore, Counts 2 and 3 are DISMISSED WITHOUT PREJUDICE.  The Final Pretrial Conference set for January 13, 2014 at 2:30 p.m. and the Jury Trial set for February 18, 2014 at 9:00 a.m. are VACATED.  CASE CLOSED.

ENTER: November 20, 2013

FOR THE COURT:

           s/Sue E Myerscough
          SUE E. MYERSCOUGH
          UNITED STATES DISTRICT JUDGE